IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

MIFFLINBURG TELEGRAPH, INC. :
               Plaintiff :
                    :    Civil Action No.
          v. :
                    :    ELECTRONICALLY
                    :    FILED
HEIDI CRISWELL, DARLENE SHARP, :
DALE E. CRISWELL, WILDCAT :
PUBLICATIONS, LLC, MARGARET :
WOLFE and RICOH, USA, INC. :
               Defendants :

## COMPLAINT

NOW COMES Plaintiff, the Mifflinburg Telegraph, Inc. (the
"Mifflinburg Telegraph"), by and through its counsel, Bybel Rutledge, LLP, and
brings this action against Wildcat Publications, LLC, Heidi Criswell, Dale E.
Criswell, Darlene Sharp, Margaret Wolfe, and RICOH USA, Inc. and avers as
follows:

1

## THE PARTIES

1.     The Mifflinburg Telegraph is a Pennsylvania corporation with its primary place of business at 358 Walnut Street, Mifflinburg, Pennsylvania 17844.

2.     The Mifflinburg Telegraph is a print shop that offers a variety of professional services including, but not limited to printing brochures, booklets, letterhead, business cards, invitations and announcements.   The Mifflinburg Telegraph also prints the Mifflinburg Telegraph, a local newspaper.  On January 30, 2014, the Mifflinburg Telegraph had five employees.

3.     Heidi Criswell ("Criswell") is an adult individual residing at 19 E. Maple St., Mifflinburg, Pennsylvania 17844. Until January 31, 2014, Criswell was an employee of the Mifflinburg Telegraph, functioning as its primary designer and printer.

4.     Darlene Sharp ("Sharp") is an adult individual residing at 802 Crestview Road, Mifflinburg, Pennsylvania 17844. Until January 31, 2014, Sharp was an employee of the Mifflinburg Telegraph, functioning as its office manager.

5.     Dale E. Criswell ("Dale Criswell") is an adult individual residing at 19 E. Maple St. Mifflinburg, Pennsylvania 17844.  Dale Criswell is Criswell's husband and was an employee of the Mifflinburg Telegraph.  Dale Criswell has not formerly terminated employment with the Mifflinburg Telegraph; however, he has not returned to work since Criswell terminated employment.

2

6. Wildcat Publications, LLC ("Wildcat Publications") is a Pennsylvania limited liability company with a registered office at 229 E. Chestnut Street, Mifflinburg Pennsylvania 17844.

7. Criswell caused a Certificate of Organization creating Wildcat Publications to be filed with the Pennsylvania Department of State on October 25, 2013. A true and accurate copy of the Certificate of Organization is attached hereto as Exhibit "A" and incorporated herein by reference.

8. Upon information and belief, Criswell is president of Wildcat Publications.

9. Upon information and belief, Heritage Printers is a division of Wildcat Publications.

10. Upon information and belief, The Mifflinburg Free Press is a local newspaper produced by Wildcat Publications.

11. Dale Criswell is the publisher of The Mifflinburg Free Press.

12. Mifflinburg Free Press is a fictitious name owned by Criswell. A true and accurate copy of the fictitious name filing filed with the Pennsylvania Department of State is attached hereto as Exhibit "B" and incorporated herein by reference.

13. Margaret Wolfe ("Wolfe") is an adult individual with a principal place of employment at RICOH USA, Inc., 2601 Gateway Drive, State College, Pennsylvania 16801.

14. RICOH USA, Inc. ("RICOH") is an Ohio corporation with a registered office of CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101.

15. RICOH conducts business in the Middle District of Pennsylvania at 2601 Gateway Drive, State College, Pennsylvania 16801.

16. Margaret Wolfe is a senior account executive employed by RICOH, and is therefore an agent of RICOH.

<u>JURISDICTION AND VENUE</u>

17. This Court has original subject matter jurisdiction under 28 U.S.C §1331 over the violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030, and the Lanham Act, 15 U.S.C. §1125, alleged herein.

18. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. §1367(a).

19. Venue lies properly in the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391(b) in that a substantial part of the events giving rise to the claims occurred in this district. Criswell, Sharp, and Dale Criswell reside in this district

4

and Wildcat Publications maintains a principal place of business in this district. Wolfe and RICOH conduct business in this district.

## FACTUAL BACKGROUND

20. John R. Stamm ("Stamm") was the sole shareholder of the Mifflinburg Telegraph, owning the Mifflinburg Telegraph since 1992 until his death on January 9, 2013.

21. Pursuant to his Last Will and Testament, Angelo Mark Papalia ("Papalia") was named executor. Papalia was appointed executor and received letters testamentary on January 23, 2013. Upon Stamm's death, the shares of the Mifflinburg Telegraph passed to his estate (the "Estate"), for which Papalia is executor.

22. During 2013, Papalia on behalf of the estate entered into negotiations with Criswell for the sale of the Mifflinburg Telegraph to her; however, the parties were unable to agree upon a sales price and negotiations ceased.

23. On January 13, 2014, Papalia appointed John Helwig ("Helwig") as President of Mifflinburg Telegraph to oversee its operations.

## THE PLOT TO "CRIPPLE" THE MIFFLINBURG TELEGRAPH[1]

24. Upon information and belief, from as early as October 2013, if not earlier, Criswell, Dale Criswell, and Sharp, with mal intent, devised and

---

[1] See email dated January 28, 2014 from Criswell to Matthew Doebler indicating that the Mifflinburg Telegraph "won't be crippled for too long once we leave . . . ." A true and accurate copy of the email retrieved from a Mifflinburg Telegraph computer is attached hereto as Exhibit "C" and incorporated herein by reference.

implemented a scheme or aided and abetted in the implementation of the scheme whereby Criswell, instead of purchasing the Mifflinburg Telegraph from the Estate, would create a competing business named Wildcat Publications, and all of the Mifflinburg Telegraph employees (with the exception of Helwig) would terminate employment without notice, in mass, to work for Wildcat Publications; however, before quitting Defendants Criswell, Sharp and Dale Criswell would attempt to "cripple" the Mifflinburg Telegraph and transfer any goodwill of the Mifflinburg Telegraph to Wildcat Publications. In attempting to "cripple" the Mifflinburg Telegraph, the parties willfully misappropriated, or aided and abetted in the willful misappropriation of, Mifflinburg Telegraph equipment. The parties intended to maliciously mislead certain Mifflinburg Telegraph customers to believing that the Mifflinburg Telegraph was engaged in an illegal operation, or that it was unable to financially survive, all to the benefit of Wildcat Publications. Additionally, Criswell and Sharp intentionally accessed, copied and deleted Mifflinburg Telegraph files and emails, fraudulently attempted to transfer the Mifflinburg Telegraph 401(k) plan to Wildcat Publications by misrepresenting to the 401(k) administrator that Wildcat Publications had purchased the Mifflinburg Telegraph, told Mifflinburg Telegraph vendors that the Mifflinburg Telegraph had either closed or moved to another location, and, upon information and belief, processed orders that were sent to the Mifflinburg Telegraph using the Mifflinburg

6

Telegraph equipment for which it appears that the Mifflinburg Telegraph was not paid. It appears that this was done in an effort to create a competing business which would benefit from the Mifflinburg Telegraph's goodwill (and equipment), while destroying the Mifflinburg Telegraph, such that Criswell would not need to purchase the Mifflinburg Telegraph from the Estate.

25. When Helwig arrived to work on February 3, 2014, he found resignations letters from Criswell, Sharp and another Mifflinburg Telegraph employee, Ms. Estella Jane Boop ("Boop"), all dated January 31, 2014 and effective immediately. Dale Criswell did not formally resign; however, he has failed to report to work since January 31, 2014.

26. After the resignations, Helwig was the only employee left at the Mifflinburg Telegraph having worked there only two weeks at the time.

## CRISWELL'S COMPUTER

27. Helwig, in attempting to maintain servicing the Mifflinburg Telegraph's clients after all of the other employees had abruptly quit, accessed Criswell's computer. Upon accessing Criswell's computer, he realized that the Mifflinburg Telegraph computer files and emails had been deleted. As the Mifflinburg Telegraph's primary designer and printer, it is believed that Criswell's computer contained client files, copies of previous orders, emails from clients

making orders, and other Mifflinburg Telegraph confidential and proprietary information.

28.　As a result, the Mifflinburg Telegraph hired a computer forensic consultant to assist it in the recovery of the files and emails. Criswell's computer was found to be in good working condition with no physical defects. Upon information and belief, Criswell intentionally and with mal intent deleted files and emails on the computer.

29.　One of the services offered by the Mifflinburg Telegraph is a quick reorder, whereby customers may either call or order online a duplicate of a previous job by giving the Mifflinburg Telegraph a job number which was associated with a file on Criswell's computer. Because Criswell deleted previous orders, the Mifflinburg Telegraph is no longer able to provide quick reorders for all jobs performed prior to February 1, 2014.

## 401(K) PLAN

30.　The Mifflinburg Telegraph offered its employees the ability to participate in a 401(k)/Profit Sharing Plan ("Mifflinburg Telegraph 401(k)") which was administered by Continental Benefits Group, Inc. ("Continental") in Burlington, New Jersey.

31.　On or about January 7, 2014, Sharp notified Continental that the Mifflinburg Telegraph was sold to Wildcat Publications.

32. By email dated January 9, 2014, Sharp provided Continental the address of Wildcat Publications, the EIN, the name of the purported new trustees, and the effective date of the change in the Mifflinburg Telegraph 401(k). A true and accurate copy of the email provided by Continental is attached hereto as Exhibit "D" and incorporated herein by reference.

33. Criswell and Sharp, without authority, submitted to Continental fraudulent documents dated August 1, 2013 purporting to remove Mr. Papalia as trustee of the Mifflinburg Telegraph 401(k) and naming themselves as trustee ("Board Resolutions and Appointment of Trustee"). A true and accurate copy of documents provided by Continental are attached hereto as Exhibit "E" and incorporated herein by reference.

34. Criswell and Sharp executed an Adoption Agreement #0001 Non-Standardized 401(k)/Profit Sharing Plan dated February 2, 2014, ("Adoption Agreement"). See Exhibit E. The Adoption Agreement indicates that the name of the adopting employer is Wildcat Publications. The Adoption Agreement also indicates that Wildcat Publications 401(k) Plan & Trust is formerly the Mifflinburg Telegraph Inc. 401(k) Plan & Trust. Upon information and belief, Criswell and Sharp caused the Adoption Agreement and Board Resolutions and Appointment of Trustee to be sent to Continental via email service.

35.   By submitting this documentation, Criswell and Sharp intentionally and with mal intent attempted to transfer and convert the assets of the Mifflinburg Telegraph 401(k) to their control and away from the control of the Mifflinburg Telegraph and the trustee of the 401(k).

<u>RICOH MACHINE</u>

36.   In processing client orders, the Mifflinburg Telegraph leased a RICOH C720S printer, serial number C40026787 ("720 Printer").  It appears that at the end of the 720 Printer lease, the Mifflinburg Telegraph could have either returned the 720 Printer to RICOH or purchased it ("buy out") at a reduced cost.

37.   Criswell indicated to Papalia that one of the Mifflinburg Telegraph's printers was at the Mifflinburg Telegraph on a trial basis and the other one was broken and that both were scheduled for removal.

38.   Criswell without authority, arranged for the Mifflinburg Telegraph to receive a new printer and executed a new lease on behalf of the Mifflinburg Telegraph.

39.   Upon information and belief, the cost of the lease of the new printer was $1,704.00.

40.   Upon information and belief, Criswell with the assistance of Wolfe, transferred the Mifflinburg Telegraph's interest in the 720 Printer to Wildcat Publications.  It also appears that Criswell was required to execute the Assumption

10

Agreement and forward it to GE Capital to receive credit through GE Capital. A true and accurate copy of an email recovered from a Mifflinburg Telegraph computer and Assumption Agreement deleted from a Mifflinburg Telegraph computer is attached hereto as Exhibit "F" and incorporated herein by reference. Papalia did not authorize the execution of the Assumption Agreement or the new lease.

41.     After the Mifflinburg Telegraph received its new printer, Criswell, with the assistance of Wolfe, arranged for the 720 Printer to be moved from the Mifflinburg Telegraph to Wildcat Publications. See email dated January 30, 2014, a true and accurate copy of the email retrieved from a Mifflinburg Telegraph computer is attached hereto as Exhibit "G" and incorporated herein by reference.

42.     Criswell, with the assistance of Wolfe, also arranged for the Mifflinburg Telegraph to "buy out" the 720 Printer by adding an additional fee to the lease for the Mifflinburg Telegraph's new printer causing the Mifflinburg Telegraph's new lease payment to increase to $1,986.00. See email dated January 13, 2014 from Wolfe to Criswell; a true and accurate copy of the email retrieved from a Mifflinburg Telegraph computer is attached hereto as Exhibit "H" and incorporated herein by reference.

43.   Criswell and Sharp also caused the Mifflinburg Telegraph to make payments on the new lease knowing that the payments included payments for equipment to be used for Wildcat Publications.

44.   By emails dated January 6, 2014, Criswell indicated "[a]s far as the world is concerned the Telegraph is now Wildcat Publications.   It is closing February 3, . . . He doesn't know equipment was ever here, we have contracts, . . . . Can we simply tell them that yes, we are the Telegraph . . . . Are we just trying to be too damn honest about this?  Can you just be 'misinformed' or just didn't quite understand what I wanted done."  A true and accurate copy of the email retrieved from a Mifflinburg Telegraph computer is attached hereto as Exhibit "I" and incorporated herein by reference.

45.   By email dated January 6, 2014, Wolfe responded to Criswell's email referenced in Paragraph 39 above indicating "Ok . . . , let's do this . . . I will process paperwork as Telegraph, moving to 'telegraph' at new location.   The invoice will be created as 'telegraph'.   Then once the assumption is done . . provided it is done, we can issue a new invoice as wildcat and credit it.  . . . .  We don't care where the check comes from."   Exhibit I.

46.   By email dated January 9, 2014, Wolfe indicated that she was "afraid [RICOH] was not going to be OK with this.  After all it is rather apparent that you are more or less sticking the Executor . . . with this lease."   A true and accurate

12

copy of the email retrieved from a Mifflinburg Telegraph computer is attached hereto as Exhibit "J" and incorporated herein by reference.

47.     Criswell, using a Mifflinburg Telegraph computer, responded that "I will say 'this is great!!' and he will say yeah!!! and pay all the money Ricoh wants…" See Exhibit J.

48.     By email dated January 10, 2014, Wolfe, indicated that "You are correct that it doesn't appear on the lease document, so he won't know that.  All he will know is that the C651 costs $1,986.00 a month.  We can move it because according to our records [the 720 Printer] is 'owned' by the Telegraph now."  A true and accurate copy of the email retrieved from a Mifflinburg computer is attached hereto as Exhibit "K" and incorporated herein by reference.

49.     On or about March 20, 2014, the Mifflinburg Telegraph received a bill from RICOH for the moving of the 720 Printer to "Mifflinburg Telegraph Inc." at Wildcat Publications' business address.  A true and accurate copy of the invoice is attached hereto as Exhibit "L" and incorporated herein by reference.

<u>REORDER FORMS</u>

50.     On February 6, 2014, Helwig opened customer orders that were at Mifflinburg Telegraph to be picked up by the customers.

51.     Inside of the customer's orders were reorder forms to have business cards and other printed forms reordered through Wildcat Publications.  A true and

accurate copy of the reorder form is attached as Exhibit "M" and incorporated herein by reference.

52.  According to the reorder form, Wildcat Publications' email address is bluebari89@mac.com.

<u>THE MIFFLINBURG FREE PRESS</u>

53.  The Mifflinburg Telegraph is unable to locate the Mifflinburg Telegraph newspaper distribution list both in paper form or electronically.  It is also unable to locate the Mifflinburg Telegraph past newspaper files.

54.  Dale Criswell is the publisher of a new local newspaper, the Mifflinburg Free Press, which is in direct competition with the Mifflinburg Telegraph newspaper.

55.  It appears that Criswell with mal intent deleted or caused the deletion of the Mifflinburg Telegraph local newspaper information files from the Mifflinburg Telegraph computer in order to provide her husband, Dale Criswell and her business, Wildcat Publications, with an unfair advantage over the Mifflinburg Telegraph newspaper.

<u>SCHEME TO DIVERT MIFFLINBURG TELEGRAPH VENDORS</u>

56.  As evidenced on the most recent invoice from RICOH, the address for the Mifflinburg Telegraph has been changed to Wildcat Publication's address. Helwig nor Papalia authorized this change.

57.     Upon information and belief, Sharp or Criswell with mal intent informed Lindemyer Munroe, the Mifflinburg Telegraph's primary supplier of paper, that the Mifflinburg Telegraph would be out of business as of the end of January.   As a result, Lindermyer Munroe blocked the Mifflinburg Telegraph's account.  The Mifflinburg Telegraph was required to reapply for credit and is now only able to purchase paper with a credit card.

58.     On January 13, 2014, using her Mifflinburg Telegraph computer, Criswell emailed Carol Pierson, General Manager of the radio station 106.5 and asked her to pull the Mifflinburg Telegraph's advertising.   A true and accurate copy of the email sent from a Mifflinburg Telegraph computer is attached hereto as Exhibit "N"   and incorporated herein by reference.

## ACCESSING MIFFLINBURG TELEGRAPH EMAIL SYSTEM AFTER TERMINATION OF EMPLOYMENT

59.     On February 2, 2014, Criswell without authority, accessed her former email account at Mifflinburg Telegraph to send an email to a Mifflinburg Telegraph client.

60.     On February 3, 2014, Criswell again, without authority, accessed her former email account at the Mifflinburg Telegraph to send an email to a Mifflinburg Telegraph's client.

61.     On February 5, 2014, Criswell, without authority, accessed her former email account at the Mifflinburg Telegraph to send an email to a Mifflinburg Telegraph client regarding an order.

62.     True and accurate copies of the emails recovered from Criswell's former computer are attached as Exhibit "O" and incorporate herein by reference.

### PROCESSING ORDERS WHICH WERE SENT TO THE MIFFLINBURG TELEGRAPH AND FOR WHICH MIFFLINBURG TELEGRAPH DID NOT RECEIVE PAYMENTS

63.     On January 23, 2014, Criswell, using her Mifflinburg Telegraph computer, emailed a Mifflinburg Telegraph client to indicate that the client's order was taken to the UPS store and that she would forward the bill.   A true and accurate copy of the email retrieved from a Mifflinburg Telegraph computer is attached as Exhibit "P" and incorporated herein by reference.

64.     On January 23, 2014, Criswell, using a Mifflinburg Telegraph computer, emailed a Mifflinburg Telegraph client regarding an order and indicated "I want to get this out of the building as soon as it's done if we can . . . I'm too suspicious of our babysitter right now."   See email dated January 23, 2014, a true and accurate copy of which is attached hereto as Exhibit "Q" and incorporated herein by reference.

65. The Mifflinburg Telegraph does not have a record of the orders referenced in paragraphs 63 through 64 or of any payment from any individual or company listed on the emails from January until March.

66. Upon information and belief, Criswell did not have capabilities to process the order without using Mifflinburg Telegraph equipment. Exhibit G.

## COMPETING WITH THE MIFFLINBURG TELEGRAPH USING MIFFLINBURG TELEGRAPH COMPUTERS

67. On January 18, 2014, Criswell emailed a Mifflinburg Telegraph client from a Mifflinburg Telegraph computer and instructed the client to send the information for her order to a Wildcat Publications email address.

68. Criswell, using her Mifflinburg Telegraph computer, emailed a Mifflinburg Telegraph client to negotiate pricing on an order indicating that she was not charging as much as Mifflinburg Telegraph was charging the client.

69. On January 24, 2014, Sharp sent to Wildcat Publications from her Mifflinburg Telegraph email account a complete list of Mifflinburg Telegraph's clients, with customer names, company names, primary contacts, telephone numbers, shipping addresses and other information. Sharp deleted the email prior to terminating employment.

70. By email dated January 30, 2014, sent from a Mifflinburg Telegraph computer, Criswell responded to a quote sent to Mifflinburg Telegraph on behalf

of Wildcat Publications. A true and accurate copy of the email is attached hereto as Exhibit "R" and incorporated herein by reference.

71. Upon information and belief, Criswell took Mifflinburg Telegraph orders and processed them through Wildcat Publications after her termination of employment. See email dated January 28, 2014, wherein she indicates that "February is a huge month for us . . ." Exhibit C.

## DEFAMATORY COMMENTS

72. In an attempt to "cripple" the Mifflinburg Telegraph, Defendants Criswell, Sharp and Dale Criswell defamed or aided and abetted in the defamation of the Mifflinburg Telegraph.

73. On January 15, 2014, using a Mifflinburg Telegraph computer, Criswell with mal intent, willfully, and knowingly emailed a Mifflinburg Telegraph client and falsely indicated that "something illegal was going on" at the Mifflinburg Telegraph.

74. On January 21, 2014, using a Mifflinburg Telegraph computer, Criswell with mal intent, willfully, and knowingly emailed a Mifflinburg Telegraph client and falsely indicated "the estate cut off our . . . ability to buy stock."

## COUNT I
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT ("CFAA")
## 18 U.S.C. §1030(a)(2)(C)
## AGAINST HEIDI CRISWELL

75.    The averments of paragraphs 1 through 74 are incorporated herein by reference as if fully set forth herein.

76.    The CFAA, 18 U.S.C. §1030(a)(2)(C), in relevant part, prohibits "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtains - . . . . information from any protected computer . . . ."

77.    The Mifflinburg Telegraph computers are used in transacting interstate commerce, and is therefore a protected computer.

78.    Criswell accessed a protected computer used in interstate commerce.

79.    While employed with the Mifflinburg Telegraph,

a.    Criswell accessed a Mifflinburg Telegraph computer to gain information regarding client orders which she intended to process as Wildcat Publications; and

b.    Criswell accessed and obtained Mifflinburg Telegraph confidential information for her personal use and the use of Wildcat Publications.

80.    After she terminated employment, Criswell has without authorization accessed a Mifflinburg Telegraph computer on three (3) known occasions by accessing her former Mifflinburg Telegraph email account and responded to

19

Mifflinburg Telegraph client emails. By doing so, she has accessed a protected computer and obtained information therefrom.

81. It is also believed that Criswell may have obtained Mifflinburg Telegraph confidential information and caused it to be sent or given to Wildcat Publications.

82. In causing Mifflinburg Telegraph confidential information to be sent or given to Wildcat Publications and used for her personal benefit, Criswell has exceeded her authorized access to a protected computer and obtained information therefrom.

83. The actions of Criswell were intentional and done without Mifflinburg Telegraph's knowledge, permission or authorization.

Wherefore, the Mifflinburg Telegraph respectfully requests that this Honorable Court enter judgment in its favor and against Defendant Heidi Criswell, including but not limited to:

a. An award of damages in excess of $5,000;

b. Interests, costs, and fees to the extent allowable by law;

c. An award of preliminary and permanent injunctive relief; and

d. Such other relief as this Honorable Court deems appropriate, just and equitable.

COUNT II
VIOLATION OF THE
COMPUTER FRAUD AND ABUSE ACT ("CFAA")
18 U.S.C. §1030(a)(5)
AGAINST HEIDI CRISWELL

84.    The averments of paragraphs 1 through 83 are incorporated herein by reference as if fully set forth herein.

85.    The CFAA, 18 U.S.C. §1030(a)(5), in relevant part, prohibits

a.    knowingly caus[ing] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

b.    intentionally access[ing] a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or

c.    intentionally access[ing] a protected computer without authorization, and as a result of such conduct, causes damage and loss.

86.    The Mifflinburg Telegraph computers are used in transacting interstate commerce, and are therefore protected computers.

87.    Criswell accessed a protected computer used in interstate commerce.

88.    While still employed with the Mifflinburg Telegraph, Criswell knowingly, with mal intent and the intent to defraud and to cause specific harm to the Mifflinburg Telegraph, without authorization or in excess of her authorization, accessed a Mifflinburg Telegraph computer and

21

a.     deleted the Mifflinburg Telegraph files and emails on the protected computer, which files and emails contained the Mifflinburg Telegraph previous client orders, client information, and other Mifflinburg Telegraph confidential and proprietary information;

b.     used the protected computer to defame the Mifflinburg Telegraph;

c.     used the protected computer to interfere with the Mifflinburg Telegraph's business relationships;

d.     used the protected computer to establish a competing business;

e.     used a protected computer to impair the confidentiality of Mifflinburg Telegraph's confidential information and trade secrets; and

f.     used a protected computer to fraudulently cause Mifflinburg Telegraph's interest in the 720 Printer to be transferred to Wildcat Publications, and caused the cost of the "buy out" of the 720 Printer to be included in the Mifflinburg Telegraph's current lease.

89.     After she terminated employment, Criswell has without authorization accessed a Mifflinburg Telegraph computer on at least three (3) known occasions.

90.     By accessing the Mifflinburg Telegraph's computer, after her employment was terminated, without authorization, she has:

a.     obtained information from a protected computer;

b.      used the protected computer to interfere with the Mifflinburg Telegraph's business relationship; and

c.      used the protected computer to impair the confidentiality of Mifflinburg Telegraph's confidential information and trade secrets.

91.     Criswell's actions are in violation of the CFAA.

92.     Criswell's actions caused a loss in excess of $5,000 to Mifflinburg Telegraph's computer files, systems and other data.

93.     Criswell's action caused a loss in excess of $5,000 due to an interruption in service of the Mifflinburg Telegraph's business and in loss of business.

94.     The Mifflinburg Telegraph hired an external computer forensic consultant to conduct a damage assessment, including an assessment of deleted, altered, or erased files, programs, and other data.

95.     The computer consultant also investigated, analyzed and recovered destroyed data and information from the Mifflinburg Telegraph's computers. The consultant is attempting to recover more data.

96.     Criswell caused an impairment to the integrity or availability of data.

97.     The actions of Criswell were intentional and done without Mifflinburg Telegraph's knowledge, permission or authorization.

Wherefore, the Mifflinburg Telegraph respectfully requests that this Honorable Court enter judgment in its favor and against Defendant Heidi Criswell, including but not limited to:

a.     An award of damages in excess of $5,000;

b.     Interests, costs, and fees to the extent allowable by law;

c.     An award of preliminary and permanent injunctive relief; and

d.     Such other relief as this Honorable Court deems appropriate, just and equitable.

## COUNT III
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT ("CFAA")
## 18 U.S.C. §1030(a)(2)(C)
## AGAINST DARLENE SHARP

98.    The averments of paragraphs 1 through 97 are incorporated herein by reference as if fully set forth herein.

99.    The CFAA, 18 U.S.C. §1030(a)(2)(C), in relevant part, prohibits "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtains - . . . . information from any protected computer . . . ."

100. The Mifflinburg Telegraph computers are used in transacting interstate commerce, and are therefore protected computers.

101. Sharp accessed a protected computer used in interstate commerce.

102. While still employed with the Mifflinburg Telegraph, Sharp knowingly, with mal intent and the intent to defraud and to cause specific harm to the Mifflinburg Telegraph, without authorization or in excess of her authorization, accessed a Mifflinburg Telegraph computer and

a.      Emailed on a protected computer information to Continental, the Mifflinburg Telegraph's 401(k)'s administrator, in an attempt to convert the assets of the 401(k) to Wildcat Publications;

b.      accessed, obtained, copied and deleted from the Mifflinburg Telegraph's computer system among other things a copy of the Mifflinburg Telegraph's client contact list and emailed it to Wildcats Publications; and

c.      used the protected computer to impair the confidentiality of Mifflinburg Telegraph's confidential information and trade secrets.

103. Sharp's actions are in violation of the CFAA.

104. Sharp's actions caused a loss in excess of $5,000 to Mifflinburg Telegraph's computer files, systems and other data.

105. Sharp's action caused a loss in excess of $5,000 due to an interruption in service of the Mifflinburg Telegraph's business and in loss of business.

106. The Mifflinburg Telegraph hired an external computer forensic consultant to conduct a damage assessment, including an assessment of deleted, altered, or erased files, programs, and other data.

107.  The computer consultant also investigated, analyzed and recovered destroyed data and information from the Mifflinburg Telegraph's computers.  The consultant is attempting to recover more data.

108.  Sharp caused an impairment to the integrity or availability of data.

109.  The actions of Sharp were intentional and done without Mifflinburg Telegraph's knowledge, permission or authorization.

Wherefore, the Mifflinburg Telegraph respectfully requests that this Honorable Court enter judgment in its favor and against Defendant Darlene Sharp, including but not limited to:

a.  An award of damages in excess of $5,000;

b.  Interests, costs, and fees to the extent allowable by law;

c.  An award of preliminary and permanent injunctive relief; and

d.  Such other relief as this Honorable Court deems appropriate, just and equitable.

COUNT IV
VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT ("CFAA")
18 U.S.C. §1030(a)(5)
AGAINST DARLENE SHARP

110.  The averments of paragraphs 1 through 109 are incorporated herein by reference as if fully set forth herein.

111.  The CFAA, 18 U.S.C. §1030(a)(5), in relevant part, prohibits

a. knowingly caus[ing] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

b. intentionally access[ing] a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or

c. intentionally access[ing] a protected computer without authorization, and as a result of such conduct, causes damage and loss

112. The Mifflinburg Telegraph computers are used in transacting interstate commerce, and therefore are protected computers.

113. Sharp accessed a protected computer used in interstate commerce.

114. While still employed with the Mifflinburg Telegraph, Sharp knowingly, with mal intent and the intent to defraud and to cause specific harm to the Mifflinburg Telegraph, without authorization or in excess of her authorization, accessed a Mifflinburg Telegraph computer and

a. Emailed on a protected computer information to Continental, the Mifflinburg Telegraph's 401(k)'s administrator, in an attempt to convert the assets of the 401(k) to Wildcat Publications;

b. accessed, obtained, copied and deleted from the Mifflinburg Telegraph's computer system a copy of the Mifflinburg Telegraph's client contact list and emailed it to Wildcats Publications; and

     c.    used the protected computer to impair the confidentiality of Mifflinburg Telegraph's confidential information and trade secrets.

115. Sharp's actions are in violation of the CFAA.

116. Sharp's actions caused a loss in excess of $5,000 to Mifflinburg Telegraph's computer files, systems and other data.

117. Sharp's action caused a loss in excess of $5,000 due to an interruption in service of the Mifflinburg Telegraph's business and in loss of business.

118. The Mifflinburg Telegraph hired an external computer forensic consultant to conduct a damage assessment, including an assessment of deleted, altered, or erased files, programs, and other data.

119. The computer consultant also investigated, analyzed and recovered destroyed data and information from the Mifflinburg Telegraph's computers. The consultant is attempting to recover more data.

120. Sharp caused an impairment to the integrity or availability of data.

121. The actions of Sharp were intentional and done without Mifflinburg Telegraph's knowledge, permission or authorization.

Wherefore, the Mifflinburg Telegraph respectfully requests that this Honorable Court enter judgment in its favor and against Defendant Darlene Sharp, including but not limited to:

a.    An award of damages in excess of $5,000;

b.    Interests, costs, and fees to the extent allowable by law;

c.    An award of preliminary and permanent injunctive relief; and

d.    Such other relief as this Honorable Court deems appropriate, just and equitable.

COUNT V
AIDING AND ABETTING THRU VIOLATION OF THE COMPUTER
FRAUD AND ABUSE ACT, 18 U.S.C. §1030, ET SEQ. ("CFAA")
AGAINST HEIDI CRISWELL, DARLENE SHARP, DALE E. CRISWELL
AND WILDCAT PUBLICATIONS, LLC

122.   The averments of paragraphs 1 through 121 are incorporated herein by reference as if fully set forth herein.

123.   As set forth above, Criswell, Sharp, Dale Criswell and Wildcat Publications entered into a scheme to cripple the Mifflinburg Telegraph to their individual and collective benefit.

124.   Criswell, Sharp, Dale Criswell and Wildcat Publications induced, caused, and contributed to the unauthorized access or access that exceeded the employee's authorization by encouraging, inducing, assisting, or aiding and abetting others to access or exceed authorized access for their individual and collective benefit.

125.   Criswell, Sharp, Dale Criswell and Wildcat Publications has violated the CFAA by aiding and abetting Criswell's and Sharp's violation of the CFAA.

Wherefore, the Mifflinburg Telegraph respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Heidi Criswell, Darlene Sharp, Dale E. Criswell, and Wildcat Publications including but not limited to:

    a.    An award of damages in excess of $5,000;

    b.    Interests, costs, and fees to the extent allowable by law;

    c.    An award of preliminary and permanent injunctive relief; and

    d.    Such other relief as this Honorable Court deems appropriate, just and equitable.

COUNT VI
CONVERSION
AGAINST HEIDI CRISWELL

126. The averments of paragraphs 1 through 125 are incorporated herein by reference as if fully set forth herein.

127. As set forth above, Criswell has converted Mifflinburg Telegraph property.

128. Criswell arranged for the transfer of the 720 Printer to Wildcat Publications possession without the Mifflinburg Telegraph's consent or knowledge.

129. Criswell did not have the lawful justification to do so.

130. Therefore, Criswell has converted the 720 Printer.

131. Criswell arranged for the cost of the buyout of the 720 Printer to be hidden in the Mifflinburg Telegraph's lease payment. Criswell knew that the Mifflinburg Telegraph's lease payment was increased to include the buyout of the 720 Printer when she executed the lease document without authorization.

132. Criswell did not have the Mifflinburg Telegraph's consent and did not have lawful justification to arrange for the cost of the buyout to be included in the Mifflinburg Telegraph's lease payment.

133. Therefore, Criswell has converted monies from the Mifflinburg Telegraph.

134. It appears that Criswell processed orders for Mifflinburg Telegraph customers or Wildcat Publications customers with Mifflinburg Telegraph equipment yet without collecting or without forwarding payment for those orders to the Mifflinburg Telegraph.

135. Criswell did not have the Mifflinburg Telegraph's consent and did not have lawful justification to do so.

136. Therefore, Criswell has converted Mifflinburg Telegraph property.

137. Criswell executed documents which were fraudulent appointing herself as a trustee of the Mifflinburg Telegraph 401(k) Plan and then attempted to convert the assets of the plan to Wildcat Publications by fraudulently signing and

causing them to be forwarded to Continental an Adoption Agreement which would have transferred the assets of the Mifflinburg Telegraph 401(k) Plan to Wildcat Publications. Criswell's actions were with mal intent, intentional, and knowingly.

138. Criswell did not have the Mifflinburg Telegraph's consent and did not have lawful justification to do so.

Wherefore, the Mifflinburg Telegraph respectfully requests that this Honorable Court enter judgment in its favor and against Defendant Heidi Criswell including but not limited to:

a.     Compensatory damages;

b.     Punitive damages;

c.     Attorneys' fees and the cost of litigation;

d.     An award of preliminary and permanent injunctive relief; and

e.     Such other relief as this Honorable Court deems appropriate, just and equitable.

COUNT VII
CONVERSION
AGAINST DARLENE SHARP

139. The averments of paragraphs 1 through 138 are incorporated herein by reference as if fully set forth herein.

140. As set forth above, Sharp converted Mifflinburg Telegraph property. Sharp executed documents which were fraudulent appointing herself as a trustee of the Mifflinburg Telegraph 401(k) Plan and then attempted to convert the assets of the plan to Wildcat Publications by causing them to be forwarded to Continental. Sharp's actions were with mal intent, intentional, and knowingly.

141. Sharp did not have the Mifflinburg Telegraph's consent and did not have lawful justification to do so.

Wherefore, the Mifflinburg Telegraph respectfully requests that this Honorable Court enter judgment in its favor and against Defendant Darlene Sharp including but not limited to:

a.      Compensatory damages;

b.      Punitive damages;

c.      Attorneys' fees and the cost of litigation;

d.      An award of preliminary and permanent injunctive relief; and

e.      Such other relief as this Honorable Court deems appropriate, just and equitable.

COUNT VIII
AIDING AND ABETTING CONVERSION
AGAINST HEIDI CRISWELL, DARLENE SHARP, DALE E. CRISWELL,
WILDCAT PUBLICATIONS, LLC, MARGARET WOLFE
AND RICOH USA, INC.

142. The averments of paragraphs 1 through 141 are incorporated herein by reference as if fully set forth herein.

143. As set forth above, Criswell, Sharp, Dale Criswell, and Wildcat Publications entered into a scheme to cripple the Mifflinburg Telegraph to their individual and collective benefit.

144. Criswell, Sharp, Dale Criswell, Wildcat Publications, Wolfe and RICOH induced, caused, and contributed to the conversion of the Mifflinburg Telegraph's property by encouraging, inducing, assisting, or aiding and abetting others to convert Mifflinburg Telegraph for their individual and collective benefit.

145. As indicated above, Wolfe, as an agent of RICOH, aided and abetted in Criswell's conversion of the Mifflinburg Telegraph's interest in the 720 Printer and in the "hiding" of the buyout payment in the Mifflinburg Telegraph's lease payment.

146. Defendants Criswell, Sharp, Dale Criswell, Wildcat Publications, Wolfe and RICOH did not have Mifflinburg Telegraph's consent and did not have lawful justification.

147. RICOH is vicariously liable for Wolfe's and other RICOH employee's actions.

Wherefore, the Mifflinburg Telegraph respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Heidi Criswell, Darlene Sharp, Dale E. Criswell, Wildcat Publications, LLC, Margaret Wolfe, and RICOH USA, Inc. including but not limited to:

a.  Compensatory damages;

b.  Punitive damages;

c.  Attorneys' fees and the cost of litigation; and

d.  Such other relief as this Honorable Court deems appropriate, just and equitable.

## COUNT IX
## BREACH OF FIDUCIARY DUTY
## AGAINST HEIDI CRISWELL, DARLENE SHARP, AND DALE E. CRISWELL

148. The averments of paragraphs 1 through 147 above are incorporated herein by reference.

149. Criswell, Dale Criswell, and Sharp, by virtue of their employment with the Mifflinburg Telegraph owed the Mifflinburg Telegraph a fiduciary duty not to act in a manner inconsistent with the interests of the Mifflinburg Telegraph.

150.  Given their positions with the Mifflinburg Telegraph, they occupied a special position of trust and confidence and owed to the Mifflinburg Telegraph, the fiduciary duties of duty of loyalty, duty of fidelity, duty of honesty, and a duty to act in the best interest of the Mifflinburg Telegraph.

151.  As set forth above, Criswell, Dale Criswell and Sharp breached their fiduciary duties to the Mifflinburg Telegraph by devising and implementing a scheme whereby they and Boop would resign simultaneously and without notice.

152.  As set forth above, Criswell, Dale Criswell, and Sharp breached their fiduciary duties to the Mifflinburg Telegraph by devising and implementing a scheme to "cripple" the Mifflinburg Telegraph to their individual and collective benefit and the benefit of Wildcat Publications.

153.  Criswell and Sharp breached their fiduciary duties to the Mifflinburg Telegraph by fraudulently attempting to transfer the assets of the Mifflinburg Telegraph 401(k) plan to Wildcat Publications.

154.  Sharp breached her fiduciary duty to the Mifflinburg Telegraph by, among other things, accessing, copying, and transferring to Wildcat Publications, the Mifflinburg Telegraph customer list.

155.  Criswell breached her fiduciary duty to the Mifflinburg Telegraph by, among other things, arranging for the transfer of the 720 Printer to Wildcat Publications, arranging for the buyout of the 720 Printer to be hidden in the lease

payments made by the Mifflinburg Telegraph, by deleting all of the files and emails from the Mifflinburg Telegraph computer which she used, by fraudulently notifying vendors that the Mifflinburg Telegraph either closed or moved to the location of Wildcat Publications, by processing orders sent to the Mifflinburg Telegraph using Mifflinburg Telegraph equipment but failing to ensure that the Mifflinburg Telegraph was paid for those orders, and by using Mifflinburg Telegraph resources and confidential information for the benefit of Wildcat Publications.

156. Even after Criswell's departure, she still gained access to her Mifflinburg Telegraph email account to divert business to Wildcat Publications.

157. As a result of Criswell's, Dale Criswell's, and Sharp's actions, the Mifflinburg Telegraph has and will continue to suffer irreparable harm and loss.

Wherefore, the Mifflinburg Telegraph respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Heidi Criswell, Darlene Sharp and Dale E. Criswell including but not limited to:

a.   Compensatory damages;

b.   Punitive damages;

c.   Attorneys' fees and the cost of litigation;

d.   An award of preliminary and permanent injunctive relief; and

e.  Such other relief as this Honorable Court deems appropriate, just and equitable.

COUNT X
AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
AGAINST HEIDI CRISWELL, DARLENE SHARP, DALE E. CRISWELL,
AND WILDCAT PUBLICATIONS, LLC

158.  The averments of paragraphs 1 through 157 above are incorporated herein by reference as if set forth in their entirety.

159.  Criswell, Dale Criswell, and Sharp knew of the breaches of fiduciary duty in which they had engaged.

160.  As set forth above, Criswell, Dale Criswell, and Sharp substantially assisted and encouraged such breaches of fiduciary duty by encouraging each other and Boop to leave the Mifflinburg Telegraph's employ simultaneously and without notice.

161.  Wildcat Publications substantially assisted and encouraged such breaches of fiduciary duties by Criswell, Dale Criswell, and Sharp and the termination of employment by Boop, and assisting them in making arrangements for accepting, and accepting the diversion of Mifflinburg Telegraph clients, employees and property.

162.  By virtue of the foregoing, Defendants aided and abetted the breaches of fiduciary duty by Criswell, Dale Criswell, Sharp and Boop.

163. As a consequence of the foregoing, the Mifflinburg Telegraph has suffered and will continue to suffer irreparable harm and loss.

Wherefore, the Mifflinburg Telegraph respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Heidi Criswell, Darlene Sharp, Dale E. Criswell and Wildcat Publications, LLC including but not limited to:

    a.    Compensatory damages;

    b.    Punitive damages;

    c.    Attorneys' fees and the cost of litigation;

    d.    An award of preliminary and permanent injunctive relief; and

    e.    Such other relief as this Honorable Court deems appropriate, just and equitable.

COUNT XI
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
AGAINST HEIDI CRISWELL, DARLENE SHARP, DALE E. CRISWELL,
AND WILDCAT PUBLICATIONS, LLC**

164. The averments of paragraphs 1 through 163 are incorporated herein by reference.

165. As set forth above, at all times relevant, the Mifflinburg Telegraph had and/or maintained existing and/or prospective contractual and/or business relationships with various third parties.

166. Criswell, Sharp, Dale Criswell and Wildcat Publications had actual knowledge of those relationships.

167. As set forth above, Criswell, Sharp, Dale Criswell and Wildcat Publications used and are using the Mifflinburg Telegraph's confidential information and trade secrets, including but not limited to Mifflinburg Telegraph's customer list.

168. Criswell, Sharp, Dale Criswell and Wildcat Publications' use of the Mifflinburg Telegraph's confidential information and trade secrets is intended to garner business from the Mifflinburg Telegraph to the detriment of the Mifflinburg Telegraph.

169. As set forth above, Criswell, Sharp, Dale Criswell and Wildcat Publications interfered with Mifflinburg Telegraph contractual relationship by among other things, misleading Mifflinburg Telegraph customers to believing that the Mifflinburg Telegraph was engaged in illegal operations or without financial resources, misleading vendors that the Mifflinburg Telegraph closed or sold, misleading RICOH that Mifflinburg Telegraph had moved, and processing Mifflinburg Telegraph business as Wildcat Publications, among other things.

170. Criswell, Sharp, Dale Criswell and Wildcat Publications intended to harm the Mifflinburg Telegraph by interfering with their contractual relationships.

171. Criswell, Sharp, Dale Criswell and Wildcat Publications do not have justification or enjoy a privilege to take the aforementioned actions.

172. As a direct and proximate result of the Criswell, Sharp, Dale Criswell and Wildcat Publications' tortious and intentional interference with the Mifflinburg Telegraph's existing and/or prospective contractual and/or business relations, the Mifflinburg Telegraph has suffered monetary and other damages, including but not limited to, loss of customers, loss of vendor contracts, loss of profits, loss of goodwill, injury to business and reputation and loss of competitive advantage.

173. Criswell, Sharp, Dale Criswell and Wildcat Publications' conduct was intentional, willful, with mal intent, extreme and outrageous and warrants the imposition of punitive damages.

Wherefore, the Mifflinburg Telegraph respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Heidi Criswell, Darlene Sharp, Dale E. Criswell and Wildcat Publications, LLC including but not limited to:

a.    Compensatory damages;

b.    Punitive damages;

c.    Attorneys' fees and the cost of litigation;

d.    An award of preliminary and permanent injunctive relief; and

e.    Such other relief as this Honorable Court deems appropriate, just and

equitable.

### COUNT XII
### MISAPPROPRIATION AND MISUSE OF TRADE SECRETS AND CONFIDENTIAL INFORMATION IN VIOLATION OF PENNSYLVANIA UNIFORM TRADE SECRETS ACT 12 PA. C.S. §5301 ET SEQ. ("PUTSA") AGAINST HEIDI CRISWELL, DARLENE SHARP, DALE E. CRISWELL, AND WILDCAT PUBLICATIONS, LLC

174. The averments of paragraphs 1 through 173 above are incorporated

herein by reference as if set forth in their entirety.

175. The files and records of the Mifflinburg Telegraph and data pertaining

to its clients, including information regarding the client's key contact persons, and

other non-public, business information are highly confidential.

176. The files and records of the Mifflinburg Telegraph are valuable

business property and derives independent economic value by not being accessible,

through proper means, to competitors.  In fact, their value is evidenced by the

Mifflinburg Telegraph not being able to service the Mifflinburg Telegraph

newspaper as a result of Criswell's and Sharp's deletion of the files necessary to

produce and deliver the paper.

177. By virtue of their employment by the Mifflinburg Telegraph,

Criswell, Sharp, and Dale Criswell had a duty not to reveal or use such confidential

information to their own benefit or to the detriment of the Mifflinburg Telegraph.

178. Criswell, Sharp, and Dale Criswell had access to the Mifflinburg Telegraph's confidential information.

179. Criswell, Sharp, Dale Criswell and Wildcat Publications knew that the use of the Mifflinburg Telegraph's information is wrong. Criswell, Sharp, Dale Criswell and Wildcat Publications knew of the violations of PUTSA by their Co-Defendants.

180. As set forth above, Criswell, Sharp, Dale Criswell and Wildcat Publications have intentionally, willfully, and with mal intent misused, disclosed, and misappropriated the Mifflinburg Telegraph's trade secrets, confidential or proprietary information and will continue to do so causing irreparable harm to the Mifflinburg Telegraph.

181. Criswell, Sharp, Dale Criswell and Wildcat Publications have intentionally, willfully, and with mal intent substantially assisted and encouraged such violations of PUTSA.

182. As a direct and proximate result of Criswell, Sharp, Dale Criswell and Wildcat Publications' actions, the Mifflinburg Telegraph has suffered monetary and other damages, including but not limited to, loss of customers, loss of vendor contracts, loss of profits, loss of goodwill, injury to business and reputation and loss of competitive advantage.

Wherefore, the Mifflinburg Telegraph respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Heidi Criswell, Darlene Sharp, Dale E. Criswell, and Wildcat Publications, LLC including but not limited to:

a.    Compensatory damages;

b.    Punitive damages;

c.    Attorneys' fees and the cost of litigation;

d.    An award of preliminary and permanent injunctive relief; and

e.    Such other relief as this Honorable Court deems appropriate, just and equitable.

COUNT XIII
UNFAIR COMPETITION
AGAINST HEIDI CRISWELL, DARLENE SHARP,
DALE E. CRISWELL AND WILDCAT PUBLICATIONS, LLC

183.    The averments of paragraphs 1 through 182 above are incorporated herein by reference as if set forth in their entirety.

184.    As set forth above, the Mifflinburg Telegraph owns, possesses, maintains and protects its confidential information.

185.    As set forth above, Criswell, Sharp, Dale Criswell and Wildcat Publications have intentionally, willfully, and with mal intent, among other things, deleted Mifflinburg Telegraph information, caused Mifflinburg Telegraph property

to be transferred to their benefit, defamed the Mifflinburg Telegraph, and stole corporate opportunity.

186. Criswell, Sharp, Dale Criswell and Wildcat Publications have intentionally, willfully, and with mal intent misused, disclosed, and misappropriated the Mifflinburg Telegraph's trade secrets, confidential or proprietary information and will continue to do so causing irreparable harm to the Mifflinburg Telegraph.

187. As a direct and proximate result of Criswell, Sharp, Dale Criswell and Wildcat Publications' actions, the Mifflinburg Telegraph has suffered monetary and other damages, including but not limited to, loss of customers, loss of vendor contracts, loss of profits, loss of goodwill, injury to business and reputation and loss of competitive advantage.

Wherefore, the Mifflinburg Telegraph respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Heidi Criswell, Darlene Sharp, Dale E. Criswell, and Wildcat Publications, LLC including but not limited to:

    a.    Compensatory damages;

    b.    Punitive damages;

    c.    Attorneys' fees and the cost of litigation;

    d.    An award of preliminary and permanent injunctive relief; and

e.    Such other relief as this Honorable Court deems appropriate, just and equitable.

## COUNT XIV
## PROCURRING INFORMATION BY IMPROPER MEANS
## AGAINST HEIDI CRISWELL, DARLENE SHARP, DALE E. CRISWELL, AND WILDCAT PUBLICATIONS, LLC

188. The averments of paragraphs 1 through 187 above are incorporated herein by reference as if set forth in their entirety.

189. The Mifflinburg Telegraph has spent significant time and money developing its confidential and proprietary information and trade secrets.

190. As set forth above, Criswell, Sharp, Dale Criswell and Wildcat Publications did acquire the confidential and proprietary information and trade secrets of the Mifflinburg Telegraph through improper means, including but not limited to receiving and responding to orders from Mifflinburg Telegraph customers.

191. As set forth above, Criswell, Sharp, Dale Criswell and Wildcat Publications did acquire and/or misappropriate, or aided and abetted in the acquisition and/or misappropriation, the Mifflinburg Telegraph's confidential and proprietary information for the purpose of "crippling" the Mifflinburg Telegraph and benefiting each other individually and collectively as well as benefiting Wildcat Publications.

192. As set forth above, Criswell, Sharp, Dale Criswell and Wildcat Publications have misused the confidential and proprietary information.

193. As a direct and proximate result of the Criswell, Sharp, Dale Criswell and Wildcat Publications' actions, the Mifflinburg Telegraph has suffered monetary and other damages, including but not limited to, loss of customers, loss of vendor contracts, loss of profits, loss of goodwill, injury to business and reputation and loss of competitive advantage.

194. Criswell, Sharp, Dale Criswell and Wildcat Publications' conduct was intentional, willful, with mal intent, extreme and outrageous and warrants the imposition of punitive damages.

Wherefore, the Mifflinburg Telegraph respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Heidi Criswell, Darlene Sharp, Dale E. Criswell, and Wildcat Publications, LLC including but not limited to:

    a.    Compensatory damages;

    b.    Punitive damages;

    c.    Attorneys' fees and the cost of litigation;

    d.    An award of preliminary and permanent injunctive relief; and

    e.    Such other relief as this Honorable Court deems appropriate, just and equitable.

## COUNT XV
## DEFAMATION
## AGAINST HEIDI CRISWELL

195.   The averments of paragraphs 1 through 194 are incorporated herein by reference.

196.   As set forth above, Criswell engaged in a scheme to "cripple" the Mifflinburg Telegraph.

197.   As such, Criswell also defamed the Mifflinburg Telegraph by, among other things, indicating that it was engaged in illegal activities, that it had closed, and that it did not have the financial resources to process client orders.

198.   Criswell's actions were intentional, with mal intent, knowingly false, and defamatory.

199.   As a direct and proximate result of Criswell's actions, the Mifflinburg Telegraph has suffered monetary and other damages, including but not limited to, loss of customers, loss of vendor contracts, loss of profits, loss of goodwill, injury to business and reputation and loss of competitive advantage.

Wherefore, the Mifflinburg Telegraph respectfully requests that this Honorable Court enter judgment in its favor and against Defendant Heidi Criswell including but not limited to:

a.   Compensatory damages;

b.   Punitive damages;

c.      Attorneys' fees and the cost of litigation;

d.      An award of preliminary and permanent injunctive relief; and

e.      Such other relief as this Honorable Court deems appropriate, just and equitable.

COUNT XVI
CIVIL CONSPIRACY AGAINST
HEIDI CRISWELL, DARLENE SHARP, DALE E. CRISWELL, WILDCAT
PUBLICATIONS, LLC, MARGARET WOLFE AND RICOH USA, INC.

200.  The averments of paragraph 1 through 199 are incorporated herein by reference.

201.  As set forth above, Criswell, Sharp, Dale Criswell and Wildcat Publications did conspire and engage in a scheme of fraud and artiface aimed at "crippling" and causing harm to the Mifflinburg Telegraph.

202.  As set forth above, Criswell, Sharp, Dale Criswell and Wildcat Publications did conspire together to violate the Computer Fraud and Abuse Act.

203.  As set forth above, Criswell, Sharp, Dale Criswell, Wildcat Publications, Wolfe and RICOH, did or aided and abetted in the conversion of Mifflinburg Telegraph property, specifically a 720 Printer and monies, to or on behalf of Wildcat Publications.

204.  As set forth above, Criswell, Sharp, Dale Criswell and Wildcat Publications did, or aided and abetted, among other things, fraudulently convert and/or attempt to fraudulently convert Mifflinburg Telegraph property, tortious

interfere with the Mifflinburg Telegraph's business resolutions, violate the Pennsylvania Uniform Trade Secrets Act, and defame the Mifflinburg Telegraph.

205. As a direct and proximate result of Criswell, Sharp, Dale Criswell, Wildcat Publications, Wolfe and RICOH's actions, the Mifflinburg Telegraph has suffered monetary and other damages, including but not limited to, loss of customers, loss of vendor contracts, loss of profits, loss of goodwill, injury to business and reputation and loss of competitive advantage.

206. Criswell, Sharp, Dale Criswell, Wildcat Publications, Wolfe and RICOH's conduct was intentional, willful, with mal intent, extreme and outrageous and warrants the imposition of punitive damages.

Wherefore, the Mifflinburg Telegraph respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Heidi Criswell, Darlene Sharp, Dale E. Criswell, Wildcat Publications, LLC, Margaret Wolfe and RICOH USA, Inc. including but not limited to:

a.   Compensatory damages;

b.   Punitive damages;

c.   Attorneys' fees and the cost of litigation; and

d.   Such other relief as this Honorable Court deems appropriate, just and equitable.

<u>COUNT XVII</u>
<u>UNJUST ENRICHMENT</u>
<u>AGAINST HEIDI CRISWELL, DARLENE SHARP, DALE E. CRISWELL</u>
<u>AND WILDCAT PUBLICATIONS, LLC</u>

207. The averments of paragraph 1 through 206 are incorporated herein by reference.

208. Criswell began to plot the scheme to "cripple" the Mifflinburg Telegraph only after not being able to agree on a sales price for the Mifflinburg Telegraph.

209. As a result of Criswell, Sharp, Dale Criswell, and Wildcat Publications' conduct as set forth above, the Mifflinburg Telegraph has suffered a detriment and they have received and appreciated benefits to which they would not otherwise be entitled.

210. Under the circumstances, their acceptance and retention of such benefits without payment of value is inequitable.

211. Therefore, as a result of their conduct as set forth above, Criswell, Sharp, Dale Criswell, and Wildcat Publications have been unjustly enriched by the receipt and appreciation of benefits resulting from the diversion of confidential information, clients and employees from the Mifflinburg Telegraph to Wildcat Publications.

212. As a result of the foregoing, the Mifflinburg Telegraph has suffered and will suffer irreparable harm and loss.

Wherefore, the Mifflinburg Telegraph respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Heidi Criswell, Darlene Sharp, Dale E. Criswell, and Wildcat Publications, LLC including but not limited to:

    a.     Compensatory damages;

    b.     Punitive damages;

    c.     Attorneys' fees and the cost of litigation;

    d.     An award of preliminary and permanent injunctive relief; and

    e.     Such other relief as this Honorable Court deems appropriate, just and equitable.

COUNT XVIII

VIOLATION OF SECTION 43(A) OF THE LANHAM ACT, 15 U.S.C.§1125 AGAINST HEIDI CRISWELL, DARLENE SHARP, DALE E. CRISWELL AND WILDCAT PUBLICATIONS, LLC

213. The averments of paragraphs 1 through 212 are incorporated herein by reference as if fully set forth herein.

214. The Lanham Act,15 U.S.C.§1125(a) provides:

a.     Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

    i.     is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

    ii.     in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

Shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

215. As set forth above, Criswell, Sharp, Dale Criswell, and Wildcat Publications have violated the Lanham Act.

216. Among other things, Criswell, Sharp, Dale Criswell, and Wildcat Publications continually market Wildcat Publications by indicating that the Mifflinburg Telegraph employees have moved.

217. Criswell, Sharp, Dale Criswell, and Wildcat Publications placed Wildcat Publication reorder forms in Mifflinburg Telegraph customers' orders.

218. Criswell, Sharp, Dale Criswell, and Wildcat Publications procured Wildcat Publication orders by responding to requests sent to the Mifflinburg Telegraph.

219. Criswell, Sharp, Dale Criswell, and Wildcat Publications are publishing a newspaper, The Mifflinburg Free Press, with a substantial similar name to the Mifflinburg Telegraph.

220.  On at least one occasion a Mifflinburg Telegraph customer entered the Mifflinburg Telegraph and requested his order.  When it was not located, he indicated that he must have placed it with Criswell and left.

Wherefore, the Mifflinburg Telegraph respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Heidi Criswell, Darlene Sharp, Dale E. Criswell, and Wildcat Publications, LLC including but not limited to:

    a.    Compensatory damages;

    b.    Punitive damages;

    c.    Attorneys' fees and the cost of litigation;

    d.    An award of preliminary and permanent injunctive relief; and

    e.    Such other relief as this Honorable Court deems appropriate, just and equitable.

Dated: March 31, 2014

Respectfully Submitted
**The Mifflinburg Telegraph, Inc.**


s/ L. Renée Lieux
L. Renée Lieux (PA 84906)
Nicole S. Kaylor (PA 200182)
**BYBEL RUTLEDGE LLP**
1017 Mumma Road, Ste 302
Lemoyne, Pa 17043
Phone (717) 731-1700
Fax (717) 731-8205
lieux@bybelrutledge.com