IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MIFFLINBURG TELEGRAPH, : Case No. 4:14-cv-00612
INC., :
:
      Plaintiff : (Judge Brann)
:
  v. :
:
HEIDI CRISWELL, DARLENE :
SHARPE, DALE E. CRISSWELL, :
WILDCAT PUBLICATIONS, LLC, :
MARGARET WOLFE, :
RICOH, USA, INC. :
:
     Defendants. :

**MEMORANDUM**
January 21, 2015

Before the Court is Plaintiff Mifflinburg Telegraph's Motion to Dismiss

Defendant Margaret Wolfe's Counterclaim and to Strike Certain Affirmative

Defenses (ECF No. 39).  In accordance with the following reasoning, the motion is

granted in part, the Defendant's counterclaim is dismissed without prejudice, the

affirmative defenses are stricken without prejudice, and the Defendant is granted

leave to amend.

**I.      BACKGROUND**

Plaintiff Mifflinburg Telegraph, Inc., ("Plaintiff" or "Mifflinburg Telegraph"

or "Mifflinburg") instituted this action on March 31, 2014.  The Complaint alleges

claims against numerous Defendants, including claims against Defendant Margaret Wolfe, the subject of the pending Motion, for aiding and abetting conversion and civil conspiracy.[1] See Pl.'s Compl., Mar. 31, 2014, ECF No. 1.  Defendants Heidi Criswell, Darlene Sharp, and Dale Criswell are former employees of the Mifflinburg Telegraph, Inc., a printing business located in Mifflinburg, Pennsylvania. Wildcat Publications is a company newly formed by Heidi Criswell ("Crisswell").[2]

After the prior owner of the Mifflinburg Telegraph, a general-interest community newspaper located in Mifflinburg, Union County, Pennsylvania, passed away, Angelo Mark Papalia, the executor of the estate, engaged in negotiations with Criswell to purchase the Mifflinburg Telegraph from the estate.  Negotiations ceased after Criswell and Papalia failed to agree upon a purchase price.

Instead of purchasing the Mifflinburg Telegraph, Criswell, Sharp, and Criswell, all former employees of Mifflinburg, left the business and established a

---

[1] Plaintiff's claims against the other Defendants include: violation of and aiding and abetting the violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq.; conversion and aiding and abetting conversion; breach of and aiding and abetting the breach of fiduciary duty; tortious interference with business relations; misappropriation and misuse of trade secrets and confidential information in violation of Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. § 5301, et seq.; unfair competition; procuring information by improper means; defamation; civil conspiracy; and, unjust enrichment. See Pl.'s Compl., Mar. 31, 2014, ECF No. 1.

[2] The Court refers to Heidi Criswell, Darlene Sharp, Dale Criswell, and Wildcat Publications, LLC, collectively as the "Wildcat Defendants."

competing business, Wildcat Publications, LLC.  Mifflinburg alleges that the

Wildcat Defendants attempted to "cripple" the Mifflinburg Telegraph before

leaving.  Pertinent to the motion under consideration, Mifflinburg alleges that

Defendant Wolfe arranged to have a Mifflinburg Telegraph printer transferred to

Wildcat Publications for use in the new business.  Mifflinburg further alleges that

Wolfe arranged to have the cost of the printer included in the Mifflinburg

Telegraph lease for another printer, such that Mifflinburg was paying for the

printer that Criswell's competing business was using without being aware of nature

of its payments.

On April 1, 2014, following the Complaint filed on March 31, 2014,

Mifflinburg filed a Motion for Temporary Restraining Order and Preliminary

Injunction against the Wildcat Defendants. (ECF No. 3).  On April 4, 2014, in

response to the Wildcat Defendant's motion, the Court denied the request for a

temporary restraining order on procedural grounds, continued the pending

preliminary injunction hearing, and granted Mifflinburg's request for expedited

discovery.  Mifflinburg then filed a renewed request for a temporary restraining

order, which the Court granted on April 10, 2014, and converted into a preliminary

injunction order on April 17, 2014 based on the Parties' agreement.

On June 2, 2014, Defendant Wolfe filed an answer to the Plaintiff's

Complaint raising affirmative defendants, and including crossclaims against all other defendants and a counterclaim against Mifflinburg for tortious interference with he employment contract. Plaintiff now moves to dismiss Wolfe's counterclaim and strike her affirmative defenses.

## II. DISCUSSION

### A. <u>Motion to Dismiss</u>

Plaintiff Mifflinburg Telegraph seeks to dismiss Defendant Wolfe's counterclaim for tortious interference with a contract for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff argues that Wolfe failed to allege sufficient facts necessary to survive a motion to dismiss for each element of a tortious interference claim under Pennsylvania law. After stating the applicable legal standard, the Court scrutinizes Plaintiff's allegations of Wolfe's pleading insufficiencies.

### 1. <u>Motion to Dismiss Legal Standard</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). The standard applies to counterclaims as well as complaints. <u>See, e.g.</u>, <u>Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.</u>,

4

382 U.S. 172, 174–75 (1965); Total Care Sys., Inc. v. Coons, 860 F. Supp. 236, 239 (E.D. Pa. 1994).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 662.  The standard seeks to eliminate those claims that do not present "enough" factual matter, assumed to be true, "to raise a reasonable expectation that discovery will reveal evidence" in support of the claims.  Twombly, 550 U.S. at 556.  Where a plaintiff fails to nudge his "claims across the line from conceivable to plausible, [his] complaint must be dismissed."  Id., 550 U.S. at 570.

To determine the adequacy of a complaint under this standard, a court should: (1) identify the elements of the claim(s); (2) review the complaint to strike conclusory allegations; and the, (3) consider whether the well-plead components of the complaint and evaluate whether all elements previously identified are sufficiently alleged.  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).  All well-pleaded facts must be accepted as true at this juncture.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).

2.    Plaintiff's Motion to Dismiss Is Granted

In her Answer, Defendant Wolfe included a counterclaim against Plaintiff Mifflinburg Telegraph alleging tortious interference with a contract.  Wolfe assets

5

that Plaintiff "knowingly, intentionally, recklessly, negligently interfered with Defendant's employment contract with RICOH when it identified Defendant in the instant litigation, and communications to RICOH preceding the same, as participating in the events forming the basis for Plaintiff's claims in its Complaint."  Def.'s Answer, Crossclaim, Counterclaim 223, June 2, 2014, ECF 35 [hereinafter Def.'s Ans.].

In order to plead a viable cause of action for tortious interference with a contract under Pennsylvania law, a party must plead: "(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." Remick v. Manfredy, 238 F.3d 248, 263 (3d Cir. 2001) (internal quotations and citations omitted).  The primary flashpoint of contention between the Parties concerns Wolfe's pleading of the first element: the nature of contractual relationship between Wolfe and her employer.

Wolfe alleges that she "was employed by Defendant RICOH, USA, Inc. . . . from 2006 and 2014 pursuant to an employment contract between Defendant and

RICOH for the exchange of Defendant's services for remuneration from RICOH." Def.'s Ans., ¶ 222.  Wolfe did not allege what type of "employment contract" existed between RICOH and herself.  While there exist several grounds for dissent, it is widely held that Pennsylvania law does not recognize a claim for tortious interference with an employment contract that is an at-will arrangement.

In a recent opinion, Ransom v. Carbondale Area School District, 982 F. Supp. 2d 397 (M.D. Pa. 2013), my colleague, the Honorable Judge Robert D. Mariani, cogently summarized the current state of Pennsylvania law regarding whether an at-will employment contract may serve as the basis for a tortious interference claim.  Judge Mariani identified Hennessy v. Santiago, 708 A.2d 126 (Pa. Super. 1998), as the lead case holding that "an at-will employee cannot allege the tort of intentional interference with contractual relations unless his or her employment is prospective."  Ransom v. Carbondale Area Sch. Dist., 982 F. Supp. 2d 397, 404 (M.D. Pa. 2013) (Mariani, J.) (citing Hennessy v. Santiago, 708 A.2d 1269, 1278–79 (Pa. Super. Ct. 1998)).   The Supreme Court of Pennsylvania, however, has not had occasion to rule on this issue and either expressly adopt or overrule Hennessy.  Because precedent contrary to Hennessy does exist, as Judge Mariani notes, "[t]he decision rests on shaky ground."  Ransom, 982 F. Supp. 2d at 405; see also White v. Brommer, 747 F. Supp. 2d 447, 468–72 (E.D. Pa. 2010)

(summarizing the debate over <u>Hennessy</u>'s status and collecting district court

predictions on how the Supreme Court of Pennsylvania would rule).

     For example, in <u>Yaindl v. Ingersoll–Rand Co.</u>, 422 A.2d 611 (Pa. Super. Ct.

1980), the Pennsylvania Superior Court stated in a footnote that "[o]f course, an

action for intentional interference with the performance of a contract lies even

though the contract interfered with it terminable at the will of the parties." <u>Yaindl</u>,

422 A.2d at 618 n.6; <u>see also</u> <u>Curran v. Children's Serv. Ctr. of Wyoming Cnty.,</u>

<u>Inc.</u>, 578 A.2d 8, 12 (Pa. Super. Ct. 1990) ("A cause of action for intentional

interference with a contractual relationship may be sustained even though the

employment relationship is at-will.") (citing <u>Yaindl</u>, 422 A.2d at 618 n.6).  While

the <u>Hennessy</u> court dismissed that statement as dicta, <u>Hennessy</u>, 708 A.2d at 1278,

the statement is based on comment g of section 766 of the RESTATEMENT (SECOND)

OF TORTS.  <u>See</u> <u>Yaindl</u>, 422 A.2d at 618 n.6.  The Supreme Court of Pennsylvania

has expressly incorporated section 766 into its substantive law.  <u>See</u> <u>Adler, Barish,</u>

<u>Daniels, Levin and Creskoff v. Epstein</u>, 393 A.2 1175, 1181–1182 ( 1978) (citing

<u>Birl v. Philadelphia Elec. Co.</u>, 167 A.2d 472 (Pa. 1961)).

     Section 766 of the RESTATEMENT (SECOND) defines the tort of intentional

interference with contractual relations.[3]   Comment g to section 766 implies that at-will contracts are covered by the Restatement's definition of this tort, because it instructs courts on a method of assessing damages for claims of interference with at-will contracts.[4]   The Superior Court in <u>Hennessy</u> neither addressed the implications of this comment, nor directly discredited the reasoning in its own prior precedent contrary to <u>Hennessy</u>'s holding.   <u>See generally</u> <u>Hennessy</u>, 708 A.2d 126 (Pa. Super. Ct.1998).

As Judge Mariani wrote, however, "regardless of whether this or any other federal court considers <u>Hennessy</u> to be well-reasoned, the fact remains that it is the Superior Court's most recent word on the issue, and therefore is currently the law

---

[3] The text of section 766 reads:

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

RESTATEMENT (SECOND) OF TORTS § 766.

[4] The comment reads:

*Contracts terminable at will.*  A similar situation exists with a contract that, by its terms or otherwise, permits the third person to terminate the agreement at will. Until he has so terminated it, the contract is valid and subsisting and the defendant may not improperly interfere with it.  The fact that the contract is terminable at will, however, is to be taken into account in determining the damages that the plaintiff has suffered by reason of its breach.

RESTATEMENT (SECOND) OF TORTS § 766, cmt. g.

of Pennsylvania." <u>Ransom</u>, 982 F. Supp. 2d at 405.  "As long as [a Superior

Court] decision has not been overturned by [the Supreme Court of Pennsylvania],

it remains binding precedent." <u>Sorber v. Am. Mortorists Ins. Co.</u>, 680 A.2d 881,

882 (Pa. Super. Ct. 1996).  Furthermore, the Superior Court explicitly reaffirmed

<u>Hennessy</u> in a more recent decision, <u>Huan v. Community Health Systems</u>, 14 A.3d

120, 125 (Pa. Super. Ct. 2011), thirteen years after <u>Hennessy</u> and over a strong

dissent.  The <u>Huan</u> court concluded that "[u]nless or until <u>Hennessy</u> is overturned

by an *en banc* panel of this Court, or by a decision of the Pennsylvania Supreme

Court, it continues to be viable precedent for this Court and for the courts of

common pleas." <u>Huan v. Cmty. Health Sys.</u>, 14 A.3d 120, 125 (Pa. Super. Ct.

2011).

It is this Court's duty to apply the substantive law of Pennsylvania to this

issue.  <u>See</u> <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64, 78–80 (1938).  As the United

States Court of Appeals for the Third Circuit wrote:

> [When there is] no reported decision by the Pennsylvania Supreme
> court or any other Pennsylvania court addressing the precise issue
> before it, it [is] the duty of the District Court to predict how the
> Pennsylvania Supreme Court would interpret [the relevant issue] if
> presented with this case.  <u>See, e.g.,</u> <u>Pennsylvania Glass Sand Corp. v.</u>
> <u>Caterpillar Tractor Co.</u>, 652 F.2d 1165, 1167 (3d Cir. 1981).  In so
> doing, a federal court can also give due regard, but not conclusive
> effect, to the decisional law of lower state courts.  <u>See, e.g.,</u> <u>Burke v.</u>
> <u>Maasen</u>, 904 F.2d 178, 182 (3d Cir. 1990).  The opinions of
> intermediate appellate state courts are "not to be disregarded by a

federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." West v. AT &T Co., 311 U.S. 223, 237 (1940).

Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000).

In light of this standard, Judge Mariani's reasoning reflects that of this

Court:

> This Court is not convinced that the Supreme Court would decide to overrule      Hennessy or Haun.  Indeed, in the fifteen years since Hennessy was decided, no such effort has been made.  Accordingly, the "predictions" that the Supreme Court will overturn Hennessy appear more like *opinions* that the Court *should* overturn it.  But it is not the purview of this Court to determine how Pennsylvania should structure its common law.  Therefore, until there is some convincing evidence that Pennsylvania law will in fact change, the Court cannot give the opinions of the parties or of various other non-precedential federal court decisions binding effect.
>
> Moreover, despite the uncertainty surrounding the Hennessy decision, this Court is not an outlier in refraining to predict its demise.  It joins several other district courts that have had occasion to rule on the issue, and that have also held that there is insufficient evidence to conclude that Hennessy does not bind them.  See Davis v. Alcoa Mill Products, Inc., 2004 WL 2063124, at *1 (E.D. Pa. 2004); Carter v. Philadelphia Stock Exch., 1999 WL 715205, at *5 (E.D. Pa. 1999); Parvensky–Barwell v. Cnty. Of Chester, 1999 WL 213371, at *8 (E.D. Pa. 1999); Buckwalter v. Parker, 1999 WL 195701, at *1–2 (E.D. Pa. 1998).

Ransom, 982 F. Supp. 2d at 406.  Consequently, it is the considered view of

this Court that the current state of Pennsylvania law does not allow tortious

interference claims based on at-will employment contracts.  See id.

11

In the case at bar, however, the Court cannot determine that Wolfe's claim must fail as a matter of law, because her pleading does not specify what type of employee she was or what kind of contract she had with RICOH.  Wolfe's pleading states only that she had an "employment contract with RICOH," without any further specificity.  Def.'s Ans., ¶ 222.  Accordingly, the Court will grant the Plaintiff's Motion to Dismiss, dismiss Wolfe's claim without prejudice, and allow her leave to amend in order to specify the precise nature of her contractual relationship with RICOH and address any other shortcomings with the pleading because there is no certainty amendment would be futile.

### B.    Motion to Strike

Mifflinburg Telegraph also seeks to strike certain affirmative defenses in Defendant Wolfe's Answer for failing to meet the pleading standards under the Federal Rules.  Federal Rule of Civil Procedure 12 (f) provides: "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f).  "Motions to strike generally are viewed with disfavor and rarely are granted."  Am. Std. Life & Accident Ins. Co. v. U.R.L., Inc., 701 F. Supp. 527, 531 (M.D. Pa. 1988) (Caldwell, J.).  This very Court has previously recognized that, "there appears to be

general judicial agreement, as reflected in the extensive case law on the subject, that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." Trivedi v. Slawecki, No. 11-cv-2390, 2013 WL 1767593 *2 (M.D. Pa. Apr. 24, 2013) (Brann, J.) (quoting 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1382 (3d ed.)).

While "[m]otions to strike are generally viewed with disfavor . . . a motion to strike under Rule 12(f) is the 'primary procedure' for objecting to an insufficient affirmative defense." United States v. Marisol, Inc., 725 F. Supp. 833, 836 (M.D. Pa. 1989).  These motions may "serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case." Id. at 837.

Mifflinburg argues that Wolfe's affirmative defenses should be stricken because she fails to satisfy the plausibility standard applied to federal pleadings pursuant to Rule 8 and the United States Supreme Court's decisions in Iqbal and Twombly.  While the Third Circuit has not yet definitively addressed the issue, the overwhelming majority of the district courts in this Circuit have held, after cogent analysis, that this plausibility standard does not apply to the pleading of affirmative

defenses.  <u>See, e.g.</u>, <u>Weed v. Ally Fin. Inc.</u>, 11-cv-2808, 2012 WL 2469544, *3–5

(E.D. Pa. Jun. 28, 2012) (proving a collection of cases holding the plausibility

standard does not apply to affirmative defenses); <u>Vurimindi v. Fuqua Sch. of Bus.</u>,

10-cv-234, 2011 WL 3803668, *2–3 (E.D. Pa. Aug. 29, 2011) ("[T]he majority of

district courts in this Circuit addressing the issue have held that <u>Twombly</u> and

<u>Iqbal</u> do not apply to the pleading of affirmative defenses).

     A textual analysis of Rule 8's different terms and requirements for pleading

claims and asserting affirmative defenses demonstrates why different standards

apply.  Federal Rule of Civil Procedure 8(a) states: "[a] pleading that states a claim

for relief must contain . . . a short and plain statement *showing* that the pleader is

entitled to relief . . . ."  FED. R. CIV. P. 8(a)(2) (emphasis added).  In its <u>Iqbal</u> and

<u>Twombly</u> decisions, the Supreme Court focused on this "showing" requirement

when establishing the plausibility standard for pleading claims.  <u>See Iqbal</u>, 556

U.S. at 678–79; <u>Twombly</u>, 550 U.S. at 555 n.3; <u>see also Phillips v. Cnty. of

Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) ("'Plausibility' is related to the

requirement of a Rule 8 'showing.'").

     In contrast, Rule 8(c) applies to affirmative defenses and requires a party

only to "affirmatively *state* any avoidance or affirmative defense."  FED. R. CIV. P.

8(c) (emphasis added).  Therefore, the plausibility standard applicable to pleading

claims based on a "showing" does not apply to affirmative defenses that a party must merely "state."  Courts that do not apply the plausibility standard to affirmative defenses often decline to do so on these grounds.  See, e.g., Tyco v. Fire Prods. LP v. Victaulic Co., 777 F. Supp. 2d 893, 900–902 (E.D. Pa. 2011).

While affirmative defenses need not rise to the level of plausibility, their pleading must still provide plaintiffs with "fair notice" of the grounds for those defenses.  Prior to Iqbal and Twombly, parties were required to plead affirmative defenses in a manner that provided fair notice of the nature of the defense.  See, e.g., Dann v. Lincoln Nat. Corp., 274 F.R.D. 139, 145–46 (E.D. Pa. 2011); United States v. Consol. Coal Co., No. 89-2121, 1991 WL 333694, *4 (W.D. Pa. Jul. 5, 1991) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1274 at 455–56 (1990)).  Generally, "[a]ffirmative defenses were not to be struck unless there was no set of facts which could be inferred from the pleadings in support of the defenses, but it was also the case that bare bones conclusory allegations could be stricken." Dann, 274 F.R.D. at 145–45 (citing Fed. Deposit Ins. Corp. v. Modular Homes, Inc., 859 F. Supp. 117, 120–21 (D.N.J. 1993) ("Motions to strike . . . will only be granted when a defense is legally insufficient under any set of facts which may be inferred from the allegations of the pleading . . . .  Defenses that are nothing but bare bones conclusory allegations can

15

be stricken.").

Although some courts argue that applying the fair notice standard to affirmative defenses in a fact specific manner is effectively applying the Twombly standard by another name, see Tyco Fire Prods. LP, 777 F. Supp. 2d at 899–900, pleading facts that are sufficient to "show" a "plausible" claim for relief requires pleading plausible facts for each inference necessary to satisfy every element of a claim.  In contrast, "stating" an affirmative defense provides "fair notice" without specific factual allegations for each element of the defense as long as the defense is logically within the ambit of the general factual allegations in the litigation.  Stated otherwise, the plaintiff must be able to infer why an affirmative defense may be germane to the litigation based on some general allegations in the pleadings.  The facts may be threadbare, but they must be there.

A party may satisfy the fair notice requirement by including a short and plain statement of the grounds for asserting an affirmative defense that demonstrates a logical relationship to the lawsuit or refer to general facts elsewhere in any parties' pleadings.  The statement need not rise to the level of plausibility, but allegations must exist somewhere in the pleadings such that parties and the court may draw a logical inference from the asserted defenses to the events underlying litigation.  See 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER,

16

Federal Practice and Procedure § 1382 (3d ed.).

In her Answer, Defendant Wolfe simply lists many of the eighteen affirmative defenses listed in Rule 8(c)(1), along with numerous other defenses seemingly unrelated to this litigation.  She does not elaborate on these defenses or in any way indicate how they may be logically related to the claims against her. Pleadings of this nature may prejudice parties who must spend time and resources preparing to respond to defenses that have no logical relation to the actual litigation.  While Defendant Wolfe need not meet the plausibility standard to plead effective affirmative defenses, fair notice requires more than a mere rote recitation of generally available affirmative defenses without citation to any other fact or premise from which an inference may arise that the stated defense is logically related to the case in any way.  See id.; Peoples State Bank of Wyalusing, PA v. Wellsburg Truck Auto Sales, Inc., No. 3:10-cv-433, 2010 WL 4922877, *3 (M.D. Pa. Nov. 29, 2010) (Caputo, J.).  Accordingly, the Court strikes Defendant Wolfe's affirmative defenses without prejudice and grants leave to amend the pleadings, because there is little indication that amendment is futile.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff Mifflinburg Telegraph's Motion to Dismiss Defendant Margaret Wolfe's Counterclaim and to Strike Certain

Affirmative Defenses is granted in part. Defendant Wolfe's counterclaim is dismissed without prejudice, her affirmative defenses are stricken without prejudice, and she is granted leave to amend her pleadings.

An appropriate Order follows.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge